UNITED STATES DISTRICT COURT            EASTERN DISTRICT OF TEXAS

JAMES L. DAVES, JR.                 §
                                    §
                                    §
*versus*                            §
                                    §        CASE NO. 1:16-CV-100
                                    §
COMMISSIONER OF THE SOCIAL          §
SECURITY ADMINISTRATION             §

## MEMORANDUM AND ORDER

Plaintiff James L. Daves, Jr. ("Daves") requests judicial review of a final decision of

the Commissioner of the Social Security Administration with respect to his application for

disability-based benefits.  The undersigned finds that the administrative law judge's ("ALJ")

decision lacks reversible error and is supported by substantial evidence.  Therefore, the

decision denying benefits is affirmed.

## I.  Judicial Review

Review of Social Security disability cases "is limited to two inquiries:  (1) whether the

decision is supported by substantial evidence on the record as a whole, and (2) whether the

Commissioner applied the proper legal standard."  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th

Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)); *see generally* 42

U.S.C. § 405(g) (describing the standard for judicial review of decisions of the Commissioner

of Social Security).  Substantial evidence is "more than a mere scintilla and less than a

preponderance."  *Perez*, 415 F.3d at 461 (citation and internal quotation marks omitted).  It

refers to "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* (internal citation and quotation marks omitted). In applying this standard, the court "may not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (internal citation omitted). The court may affirm only on the grounds that the Commissioner stated for his decision. *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam).

In order to qualify for disability benefits, a claimant must suffer from a disability. *See* 42 U.S.C. § 423(d)(1)(A). The Social Security Act defines a disability as a "medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity." *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *see also* 42 U.S.C. § 423(d)(1)(A). The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *see also Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The analysis is:

> First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [his] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations ["The Listings"]. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.

*See Waters*, 276 F.3d at 718 (quoting *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991));￼
*see generally* § 404.1520. The claimant bears the burden of proof with respect to the first four steps of the five-step analysis. *Waters*, 276 F.3d at 718. If, at any step, the Commissioner finds that the claimant is or is not disabled, the ALJ need not continue the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Reviewing courts give the Commissioner's decisions great deference. *Id.* at 565-66. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Tex. Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). When the Commissioner fails to apply correct principles of law, or when substantial evidence does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have the power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies. *See, e.g.*, *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

## II.  Background

### A.    Factual History

Daves was 38 years old at the time of the hearing and is a high school graduate.  (Tr. 41).  He is 6'3" tall and weighs approximately 375 pounds.  He lives with his wife and his children who are ages 13 and 10.  On February 29, 2012, while working as a truck driver, Daves injured his back when he pulled a tarp off the load on his trailer and felt a pop in his back.  He experienced pain in his lower back and down his left leg.  Initially, Daves was treated by his family doctor, who prescribed medication, physical therapy, and steroid injections.  In August 2012, Daves underwent a partial laminectomy at L5-S1.  Thereafter, Daves underwent physical therapy but reportedly found the pain to be more intense than before the surgery.  Doctors subsequently implanted in Daves a dorsal column stimulator.  Daves, however, testified that it did not alleviate his pain.

Daves's wife is unemployed, but he receives worker's compensation benefits.  He testified that he is in pain all the time and is unable to do anything without having to lay down.  He admitted to having gained 130 pounds since the accident, and he concedes that the extra weight has exacerbated his condition.  Apart from driving a truck, Daves has attempted no other work.  He currently takes medication prescribed by Dr. Ryan McHugh ("Dr. McHugh"), a pain management doctor.  A typical day for Daves consists of watching television from his recliner and lying in bed.

Daves applied for Disability Insurance Benefits ("DIB") on September 10, 2012, alleging disability beginning April 30, 2012, due to his lower back injury and numbness in his legs.[1] (Tr. 172).

## B.     Procedural History

The agency denied Daves's application initially and on reconsideration; thereafter, he requested an administrative hearing. (Tr. 4-10). Daves and his attorney, Rod Palmer, attended the administrative hearing in Beaumont, Texas, via video conference before ALJ Daniel E. Whitney ("ALJ Whitney") in Houston, Texas, on August 20, 2014. (Tr. 15).

## C.     Administrative Decision

ALJ Whitney utilized the aforementioned five-step sequential evaluation process in deciding Daves's disability claim. (Tr. 15-29). At steps one and two, ALJ Whitney found that Daves met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since his alleged onset date of April 30, 2012. (Tr. 17). At steps three and four, he found Daves to be severely impaired due to morbid obesity, degenerative disc disease, lumbosacral radiculitis, status post partial laminectomy/discectomy, and trochanteric bursitis. He concluded, however, that these impairments did not meet or medically equal a listed impairment at step three. (Tr. 17-18).

---

[1] Social Security DIB are authorized by Title II of the Social Security Act and provide income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(c) (definition of insured status); 42 U.S.C. § 423(d) (definition of disability). In contrast, SSI benefits are authorized by Title XVI of the Social Security Act and provide an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. 20 C.F.R. § 416.110 (2015). Eligibility for SSI is based on proof of disability and indigence. *See* 42 U.S. C. § 1382c(a)(3) (definition of disability); 42 U.S.C. § 1382(a) (financial requirements). Although these are separate and distinct programs, applicants to both programs must prove "disability" under the Act. *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382(c)(3)(A) (SSI). The law and regulations governing the determination of disability are the same for both programs. *Greenspan*, 38 F.3d at 236.

Next, ALJ Whitney determined that Daves retained the residual functional capacity ("RFC") to perform a sedentary work as defined in 20 CFR § 404.1567(a), except that he was limited to sitting for a total of 6 hours in an 8-hour workday; standing/walking for a total of 2 hours in an 8-hour workday; occasionally lifting and/or carrying 10 pounds; frequently lifting and/or carrying less than 10 pounds; occasionally climbing (though no climbing of ropes, ladders, or scaffolds); occasionally balancing, stooping, kneeling, crouching, or crawling; and alternating between sitting and standing at 30 minute intervals. (Tr. 18-27). ALJ Whitney concluded that Daves's medically determinable impairments could reasonably cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible for the reasons explained in the decision. (Tr. 20).

Based on testimony from the vocational expert, Daves's age, education, work experience, and RFC, ALJ Whitney opined that Daves could perform other work at a sedentary level, including: a charge account clerk, a cubical cashier, and an assembly worker. (Tr. 28-29). Accordingly, ALJ Whitney determined that Daves was not disabled during the relevant period. (Tr. 29). As a result, Daves requested review of the administrative decision. The Appeals Council, however, declined review. (Tr. 4-10). Therefore, ALJ Whitney's decision serves as the Commissioner's final decision for purposes of judicial review pursuant to 42 U.S.C. § 405(g).

### III. Analysis

Daves raises the following issues on appeal: (1) whether the ALJ failed to analyze the treating physician's opinions and the Disability Determination Examining Physician's opinions properly; (2) whether the ALJ properly determined Daves's credibility; (3) whether the ALJ's

RFC assessment, the hypothetical to the vocational expert, and the opinion of the vocational expert were all flawed; and (4) whether new evidence submitted in Daves's brief merits a remand.

As to whether the ALJ failed to analyze the treating physician's opinions and the Disability Determination Examining Physician's opinions properly, the Commissioner argues that the ALJ properly considered the medical opinions of record and correctly explained the weight he gave to those opinions. Regarding the issue of whether the ALJ failed to evaluate Daves's credibility properly, the Commissioner asserts that the ALJ correctly found Daves's subjective allegations of functional limitations to be inconsistent with the record. As to whether the ALJ's RFC assessment, the hypothetical to the vocational expert, and the opinion of the vocational expert were flawed, the Commissioner asserts the ALJ properly determined that other work was available for Daves. Finally, regarding whether the new evidence submitted in Daves's brief merits a remand, the Commissioner argues that the new evidence is not material and, in any event, Daves failed to show good cause as to why the evidence was not submitted earlier.

### A. Issue One: Did the ALJ fail to analyze the treating physician's opinions and the Disability Determination Examining Physician's opinions properly?

Daves contends that the ALJ failed to give adequate reasons for the weight he assigned to the opinion of Daves's treating physician, Dr. Larry Brown ("Dr. Brown"). According to Daves, the ALJ merely issued a conclusory statement that Dr. Brown's opinion "contrasts sharply with other evidence in the record." He also contends that the ALJ did not properly analyze the opinion of Dr. Ryan McHugh ("Dr. McHugh"), Daves's pain management specialist, arguing the ALJ decided the case without waiting to receive certain medical records

from Dr. McHugh. The Commissioner responds that the ALJ discussed at length the evidence in the record, including Dr. Brown's treatment notes, which contrasted sharply with his own opinion. Regarding Dr. McHugh's opinion, the Commissioner notes that the ALJ informed Daves's counsel that he would hold the record open for a couple of days to receive the requested documents, and in fact did so. Those documents, however, were not received until after the opinion was issued.

The United States Court of Appeals for the Fifth Circuit has held that the treating physician's opinion is entitled to controlling weight if it is well-supported by medical evidence and not inconsistent with other evidence. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Generally, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). Nonetheless, the treating physician's opinions are not conclusive; the ALJ has the sole responsibility for determining the claimant's disability status. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

Controlling weight is assigned to the opinions of a treating physician if such opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Martinez*, 64 F.3d at 176; *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. § 927(b), (d)(1). The ALJ may decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are

brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

Accordingly, when good cause is shown, less weight, little weight, or no weight may be given to the physician's testimony. The good cause exceptions include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott*, 770 F.2d at 485. The ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

Further, in *Newton*, the Fifth Circuit held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of a treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 416.927(c)." 209 F.3d at 453. Under 20 C.F.R. § 416.927, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors that "tend to support or contradict the opinion." 20 C.F.R. § 416.927(c); *see* SSR 96-6p, 1996 WL 364180, at 3 (S.S.A. July 2, 1996); SSR 96-2p, 1996 WL 374188, at 4.

The ALJ concluded that found little weight should be accorded Dr. Brown's Physical RFC Assessments completed on November 24, 2012, and July 14, 2014. (Tr. 27). In the first

assessment, Dr. Brown determined that Daves needed to lie down or recline for 15 to 30 minutes after working for 1 to 2 hours. He also opined that Daves could sit for a total of 4 to 5 hours in an 8-hour workday and could stand and/or walk for a total of 1 to 2 hours. Dr. Brown further concluded that Daves could lift and/or carry only up to 5 pounds occasionally due to chronic pain and was restricted to walking, standing, and sitting for less than 2 hours. (Tr. 27). In the second assessment, Dr. Brown found that Daves needed to lie down or recline on a regular basis, but increased the amount of time to 3 to 5 times per day for 30 to 90 minutes due to lower back pain with radicular symptoms. (Tr. 27). Dr. Brown determined that Daves could sit for only 3 to 4 hours a day in an 8-hour workday and could stand and/or walk for a total of 1 to 2 hours. He further opined that Daves could lift up to 5 pounds frequently and carry up to 5 pounds occasionally due to severe chronic back pain radiating into the left leg. (Tr. 27).

In evaluating Dr. Brown's opinion and according it little weight, the ALJ stated that the opinion "contrasts sharply with other evidence in the record, which renders it less persuasive . . . ." (Tr. 27). Daves complains that the ALJ erred by making this conclusory statement and did not link his decision with evidence in the record. The court disagrees. In making his decision, the ALJ thoroughly discussed the medical evidence refuting Dr. Brown's opinions.

As noted by the Commissioner, the ALJ's decision reveals that he carefully considered Daves's medical treatment history, supportability, consistency, and weighed it with other medical evidence. The ALJ extensively discussed Daves's visits with Dr. Brown, who was treating Daves in connection with a worker's compensation case. (Tr. 20). On April 23,

10

2012, Daves visited Dr. Brown for lower back pain, complaining that his back pain was an 8 on a scale of 1 to 10. The doctor observed, however, that Daves appeared to be well-developed, well-nourished, and in no acute distress. (Tr. 20). In addition, he had full range of motion and his straight-leg raising test was negative.

On August 20, 2012, Daves had back surgery at Houston Metro Ortho and Spine Surgery Center. Although he continued to complain of back pain after the surgery, Dr. Richard Francis, a board-certified orthopedic surgeon who examined Daves on November 1, 2012, found no evidence of recurring disc herniation.

On February 11, 2013, Daves reported to Dr. Brown that he had "good and bad days." During the physical exam, Dr. Brown observed that Daves was in mild pain and distress. His straight-leg raising test was again negative. Dr. Brown saw Daves once again on July 14, 2014, and, at that appointment, Daves reported no improvement. Nonetheless, when examined, Daves appeared to be well-nourished and in no acute distress. Examination of his back showed no CVA or spasms and his straight-leg raising test was again negative. Dr. Brown recommended "moderate activity" to maintain the muscle tone in Daves's back and modified his work duties to include no frequent bending, stooping, and lifting.

The ALJ also reviewed the records of Dr. Saurabh Singh, M.D. ("Dr. Singh"), who examined Daves on January 28, 2013. Dr. Singh noted that Daves's gait was normal and stated that he could walk without assistive devices. Daves could toe/heel walk, hop, and tandem walk. Dr. Singh, who is board certified, opined that Daves had the ability to do work activities such as sitting, standing, moving about, and lifting and that his obesity should not interfere with his work performance.

On July 14, 2014, Dr. Brown again examined Daves for back pain, noting no acute distress. He was oriented to person, place, and time, and his cranial nerves were grossly intact. There was no evidence of back spasms and his straight-leg raising tests again were negative. Dr. Brown prescribed a treatment plan of heat/rest/activity as directed. Again, Dr. Brown recommended that Daves engage in "moderate activity" to maintain muscle tone in his back.

In conclusion, Dr. Brown's recommendation that Daves engage in "moderate" activity does not support the degree of restrictions found in Daves's Physical RFC Assessments. Indeed, Dr. Singh opined that Daves could perform work-related activities. Additionally, the ALJ reviewed the opinions of Dr. Kavitha Reddy, M.D., and Dr. Yvonne Post, D.O., both of whom are Disability Determination Service Physicians and concluded that Daves could perform work duties. Thus, the ALJ had "good cause" to give lesser weight to Dr. Brown's opinion and substantial evidence supports that decision. No error is shown.

"[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 416.927(c)." *Newton*, 209 F.3d at 453. Therefore, it was not necessary for the ALJ to review the factors under the criteria set forth in 20 C.F.R. § 416.927(c), as he relied upon medical evidence from an examining specialist, Dr. Singh, in assigning less weight to the opinion of treating physician, Dr. Brown.

During the hearing on April 20, 2014, Daves's attorney informed the ALJ that he had not been able to obtain additional medical records from Dr. McHugh who was a pain

management specialist that had been treating Daves. (Tr. 36, 45). The ALJ advised the attorney that he would leave the record open for a couple of days to receive those documents and that Daves needed to physically obtain the records that day if they had not been received by counsel. (Tr. 37). More than four months passed and the ALJ apparently did not receive those records from Daves's counsel and issued his decision on September 3, 2014. It appears from the date/time stamp at the top of the records that they were not received by counsel or submitted until September 9, 2014. (Tr. 645). The Appeals Council considered those medical records and found no error in the ALJ's decision. (Tr. 4-10).

The Social Security regulations explicitly permit claimants to submit new evidence to the Appeals Council, who must consider the evidence, but upon consideration, may reject the evidence in certain circumstances. *Lombard. v. Astrue*, 246 F. App'x 875, 878 (5th Cir. 2007). When reviewing the ALJ's decision, the court should review the evidence as a whole, including the new evidence submitted to the Appeals Council, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006).

In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *Dorsey v. Heckler*, 702 F.2d 597, 604 (5th Cir. 1983). In interpreting the materiality requirement, the Fifth Circuit has held that "a remand to the Secretary is not justified if there is no reasonable possibility that it would have changed the outcome of the Secretary's determination." *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981).

13

Furthermore, "[i]mplicit in the materiality requirement . . . 'is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.'" *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) (quoting *Szubak v. Sec'y of Health & Human Serv.*, 745 F.2d 831, 833 (3d Cir. 1984)).

In Daves's case, the evidence is primarily cumulative, and adds little, if anything, to the substantial medical evidence and record as a whole, and it is therefore unlikely that there is a reasonable possibility that it would have changed the outcome of the ALJ's determination. Daves's new evidence is primarily cumulative of the evidence submitted in the record. The treatment evidence submitted after the ALJ's decision consists of treatment records from Dr. McHugh from March 27, 2012, to July 29, 2014. (Tr. 5, 8, 9). The July 29, 2014, records indicate that Daves suffered from chronic back pain, morbid obesity, and muscle spasms. (Tr. 646). The records also indicate that the symptoms are relieved by injection. *Id.* Dr. McHugh noted that Daves had moderate lumbar tenderness, but that he ambulated well, had no sensory/motor changes, and was well-developed. While these records indicated that Daves suffered from chronic back pain, morbid obesity, and muscle spasms, they also reveal the problems were consistently stable. *Id.* Initially, the problems were worsening, as seen in the February 5, 2013, and January 18, 2013, office visits, but all subsequent visits showed stability. *Id.* The new evidence does not rise to the level of making the ALJ's ultimate findings insufficiently supported. The new evidence, whether taken together or separately, is not enough to disturb the substantial evidence that supports the ALJ's decision.

## B.  Issue Two:  Did the ALJ properly determine Daves's credibility?

Daves argues that the ALJ did not adequately justify his finding that the testimony was not credible and that the credibility determination was contrary to the law and was not supported by substantial evidence.  Daves complains that certain statements were taken out of context.  Specifically, Daves complains about statements made in Exhibit 8E/4.  He argues that the ALJ erred in concluding that he (Daves) had a general unpersuasive appearance (showing no evidence of pain or discomfort) and demeanor at the hearing.  Daves contends that he was dressed appropriately and was respectful to the ALJ during the hearing in which he appeared by video-conference.  In addition, he argues that his failure to accurately provide the date of his weight gain is insignificant as to his credibility.

The Commissioner responds that the ALJ gave sufficient reasons for finding Daves less than credible, and that his reported activities of daily living, albeit limited, indicated that Daves was not completely disabled as alleged.  Regarding Daves's argument that he was not without pain or discomfort during the hearing and may have been taking medication, the Commissioner argues that Daves's appearance and demeanor was only one factor in evaluating his credibility.  Finally, the Commissioner argues that the ALJ recognized that the inaccuracy in Daves's testimony regarding his weight gain may not have been the result of a conscious intent to mislead but indicative of Daves's possible unreliability in his subjective reporting.

Recently, in March 2016, Social Security Ruling 16-3p superseded Social Security Ruling 96-7p.  SSR 16-3P (S.S.A. Mar. 16, 2016).  SSR 16-3p eliminated the use of the term "credibility" in evaluating an individual's subjective symptom evaluation.  *Id.*  Now, in determining whether an individual is disabled, the ALJ is to consider all of the individual's

symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record. *Id.*

Under the regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability. SSR 16-3P. Nonetheless, if an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process set forth in the regulations. *See* 20 CFR §§ 404.1529, 416.929. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. *Id.* Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ will also use the factors set forth in 20 CFR §§ 404.1529(c)(3) and 416.929(c)(3), which include:

1.    The individual's daily activities;

2.    The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.    Factors that precipitate and aggravate the symptoms;

4.    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.    Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.    Any measures other than treatment the individual uses or has used to

relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.    Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.  Although the ALJ is not required to "follow formalistic rules in his articulation" of choices, the administrative decision should be sufficiently specific to make clear that these factors were considered.  *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988); *see also Hillman v. Barnhart,* 170 F. App'x 909, 913 (5th Cir. 2006) (holding that ALJ was *not* required to "explicitly discuss every factor set forth in the regulations . . . [when] the ALJ elicited the pertinent information from [plaintiff] . . . [and] remand would be fruitless in light of the lack of objective medical evidence in the record to support [plaintiff]'s allegations of disabling back pain.").

The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.  Rather, adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.  *Id.*

The ALJ noted that he made his credibility determination based on a consideration of the entire case record.  The ALJ initially looked at Ex. 8E/4 wherein Daves noted that he needed assistance with some of his personal needs but could do others for himself.  (Tr. 201). Daves also stated in the report that there were no changes in his daily activities since he last completed a disability report.  *Id.*  Secondly, the ALJ determined that Daves had a generally

unpersuasive appearance and demeanor while testifying at the hearing but emphasized that this observation was only one among many being relied upon in reaching a credibility determination. Third, the ALJ noted that Daves showed no evidence of pain or discomfort while testifying at the hearing and gave that observation "slight weight" in the credibility determination. Fourth, the ALJ noted that Daves may have given inconsistent information about his weight, which weakened his credibility. Finally, as stated above, the ALJ went through Daves's treatment in detail, wherein he noted on numerous occasions that, to the examining physicians, Daves did not appeared to be in acute distress.

The ALJ found, with regard to Daves's daily activities, that he was not as limited to the extent one would expect, given the complaints of disabling symptoms and limitations. (Tr. 19). As a whole, the ALJ took into account the claimant's impairments and the evidence in the record and determined that his impairments are adequately accommodated by the residual functional capacity. (Tr. 27). Accordingly, substantial evidence supports the ALJ's findings.

### C. Issue Three:   Were the ALJ's RFC assessment, the hypothetical to the vocational expert, and the opinion of the vocational expert flawed?

As stated above, ALJ Whitney determined that Daves retained the RFC to perform sedentary work as defined in 20 CFR § 404.1567(a), except that he was limited to sitting for a total of 6 hours in an 8-hour workday; standing/walking for a total of 2 hours in an 8-hour workday; occasionally lifting and/or carrying 10 pounds; frequently lifting and/or carrying less than 10 pounds; occasionally climbing, but no climbing of ropes, ladders, or scaffolds, occasional balancing, stooping, kneeling, crouching, or crawling; and alternating between sitting and standing at 30 minute intervals. (Tr. 18-27).

The ALJ asked the vocational expert if jobs existed in the national economy for an individual with Daves's age, education, work experience, and RFC. (Tr. 28). The vocational expert responded that Daves could perform the requirements of representative occupations such as charge account clerk, cubical cashier, assembly worker—all of which meet the requirements of a sedentary exertional level. (Tr. 28-29). Daves argues that the hypothetical to the vocational expert is flawed because it is based on a contradictory RFC, rendering the vocational expert's report defective.

The hypothetical to the vocational expert must include the functional limitations of the claimant as determined by the RFC. Soc. Sec. Rul. 96-9p instructs that a claimant's work related ability be assessed on a function-by-function basis. An ALJ, however, is not limited to considering only medical evidence in determining a claimant's RFC. Rather, RFC is a function-by-function inquiry based on all of the relevant evidence of a claimant's ability to do work related activity. Impairments that remain constant at all levels of exertion are non-exertional impairments/limitations. In order for a non-exertional limitation to affect a claimant's ability to work, it must be a significant non-exertional limitation, *i.e.*, it must impact the claimant's ability to function. *Shivel v. Astrue*, 260 F. App'x 88, 92 (10th Cir. 2008). Where a minor non-exertional limitation does not affect the claimant's RFC, the ALJ and the courts may disregard it. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The ALJ evaluates the extent to which the claimant's non-exertional impairments impede his ability to perform particular jobs, *i.e.*, whether or not those non-exertional impairments are significant impairments. *Wingo v. Bowen*, 852 F.2d 827, 830 (5th Cir. 1988). In a situation where an individual is subject to a composite of exertional and non-exertional limitations, the ALJ must

evaluate the extent to which his work capability is diminished because the condition precludes the claimant from performing some of those enumerated jobs. *Dellolio v. Heckler*, 705 F.2d 123, 127 (5th Cir. 1983). In making this determination, the ALJ must consider a claimant's subjective symptoms as well as objective medical evidence. *Wingo*, 852 F.2d at 830.

The ALJ considered all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, together with the opinion evidence in the record in assessing Daves's RFC. (Tr. 18-22). The allegedly defective hypothetical included Daves's limitations. When an ALJ questions a vocational expert, the form of the question is discretionary; however, the questions must set out the specific physical and mental impairments. *Bowling*, 36 F.3d at 436. Specifically, the ALJ's hypothetical question posed to the vocational expert must reasonably incorporate all disabilities of the claimant recognized by the ALJ. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Unless there is record evidence to adequately support [assumptions made by a vocational expert], the opinion expressed by the vocational expert is meaningless."); *Bowling*, 36 F.3d at 436. The claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions, including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question. *Id.* As such, the ALJ need only include in his questioning those impairments that the ALJ has found to be credible. Likewise, the ALJ may exclude from the hypothetical any alleged impairments that he has properly rejected as unsubstantiated.

Here, the ALJ's hypothetical was based on the RFC that included all of Daves's limitations found to exist by the ALJ and therefore constitutes substantial evidence. As such, no error is shown.

### D. Issue Four:  Does the new evidence merit a remand?

Daves argues that the new evidence submitted in his brief merits a remand. The Commissioner counters that although the evidence is new, it is not material and, in any event, Daves failed to show good cause as to why the evidence was not submitted earlier. The new evidence consists of medical documents, including:  (1) Plaintiff's Exhibit A, Report of Dr. Cary Bartlow, Vocational Rehabilitation Evaluation dated January 2016; (2) Plaintiff's Exhibit B, Dr. Larry Brown's Physical RFC Assessment from April 2016; (3) Plaintiff's Exhibit C, Dr. Stephen Wilson, Orthopedic Specialist, Medical Report dated December 2015; (4) Plaintiff's Exhibit D, Neurologist, Dr. Brian Snell's ("Dr. Snell") Medical Report on additional surgery or implanting dorsal column stimulator; and (5) Plaintiff's Exhibit E, TheraSpecialists Physical Therapy reports.[2]

Daves contends Exhibits A-E constitute evidence that is new and material, relates to the period on or before the date of the hearing decision, and that if the ALJ had considered the evidence, it would have reasonably resulted in a fully favorable decision. The court may not consider new evidence in determining whether the agency decision was supported by substantial evidence, only to the extent of determining whether the new evidence warrants a remand. *Lombard v. Astrue*, 246 F. App'x 875 (5th Cir. 2007).  Additional evidence warrants

---

2 Daves references records from TheraSpecialists Physical therapy as Exhibit E; however, no TheraSpecialists records were attached to his brief or otherwise provided to the court.

a remand "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). In order to justify a remand, the evidence must first be "new" and not merely cumulative of what is already in the record. *Szubak*, 745 F.2d at 833. Second, the evidence must be material, relevant, probative, and likely to have changed the outcome of the Secretary's determination. *See Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981). Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989).

There is no dispute that the exhibits constitute new evidence. Exhibits A-C postdate the ALJ's decision, and Exhibit D bears a date within the adjudicated period. The fact that evidence relates to a period after the ALJ decision does not preclude it from also relating to the earlier period. While the date is undoubtedly relevant, the date alone does not make the evidence unrelated to the time-period on or before the ALJ's decision.

A determination that the evidence is cumulative necessarily means that other objective evidence was offered relating to that issue. With respect to Exhibit A, the opinion evidence comes from Dr. Bartlow, a vocational expert. Although the opinion of Bartlow was tendered after the hearing, the limitations discussed by Bartlow were considered by the ALJ; therefore, the evidence is cumulative. In addition, a disability determination is solely within the purview of the ALJ; thus, Bartlow's opinion on disability would not be outcome determinative. Daves also took an oral IQ test—the Shipley Institute of Living Scale—which he contends showed a low average range of intelligence, a WAIS-R equivalent IQ of 90. According to *Wecheler's Measurement and Appraisal of Adult Intelligence*, however, approximately 95% of the

22

population has an IQ between 70 and 130, with 70 indicating borderline intellectual functioning. *Joseph D. Matarazzo, Wechler's Measurement and Appraisal of Adult Intelligence* 124-25 (5th ed. 1972). This evidence does not warrant remand.

Exhibit B is an RFC form completed by Dr. Brown. The evidence is largely cumulative, as the ALJ previously considered two RFC forms from Dr. Brown, to which he accorded little weight. (Tr. 27).

Exhibit C is a Worker's Compensation evaluation by Dr. Stephen Wilson ("Dr. Wilson") performed more than one year after the adjudication period. As expected, the more time that elapses between the ALJ's decision and the creation of the new evidence, the greater the likelihood that the new evidence is unrelated to the period on or before the ALJ decision. Nonetheless, this factor is not determinative. In the evaluation, Dr. Wilson opined that Daves could not perform his past relevant work, a finding already made by the ALJ. (Tr. 27).

Exhibit D, from Dr. Snell, is dated during the adjudication period, noting that Daves should have a dorsal column stimulator, and restricting his lifting/pushing/pulling to 10 pounds. The ALJ previously considered the dorsal column stimulator, as Daves already had it at the time of the decision, and the RFC determination is for sedentary work, consistent with Dr. Snell's restrictions. (Tr. 18).

Although the evidence is relevant, it simply reinforces the record evidence pertaining to Daves's restrictions and conditions and, therefore, is cumulative. The new evidence must demonstrate that, if accepted, it would have changed the outcome of the determination. In addition, Daves also must show that he had good cause for not timely submitting the evidence. The Fifth Circuit has held that it is "the settled law of our Circuit that new evidence is not the

requisite good cause for . . . a remand unless a proper explanation is given of why it was not submitted earlier." *Geyen v. Sec'y of Health & Human Servs.*, 850 F.2d 263, 264 (5th Cir. 1988). Daves does not offer a justification for not previously incorporating the evidence into the record. Consequently, he fails to meet the statutory requirement for good cause.

Daves has failed to show that the new evidence would have changed the outcome of the case. *See Kane v. Heckler*, 731 F.2d 1216, 1219-20 (5th Cir. 1984) (stating that to sustain error for failure of the ALJ to properly develop the record, claimant must show "prejudice" and that the additional evidence "might have altered the result"). Additionally, Daves failed to demonstrate "good cause for the failure to incorporate such evidence into the record in a prior proceeding," as required by 42 U.S.C. § 405(g). *Lombard*, 246 F. App'x at 878. The mere fact that a medical report is of recent origin is not enough to meet the good cause requirement. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). The new evidence is not grounds for remand.

For the reasons set forth above, Daves's complaint should be dismissed. A final judgment will be entered separately.

SIGNED at Beaumont, Texas, this 29th day of September, 2017.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE